Filed 7/25/16  P. v. Calloway CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAMAR CALLOWAY,<br><br>    Defendant and Appellant. | B264509<br><br>(Los Angeles County<br>Super. Ct. No. NA100417) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed as modified.

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Lamar P. Calloway appeals from his judgment of conviction for petty theft after a specified prior conviction (Pen. Code, § 490.2)[1] for taking four bags of laundry detergent from a grocery store. We order the abstract of judgment corrected in one respect but otherwise affirm.

## FACTS

### 1. Prosecution Evidence

Michael Heranic and Larry Zamora were loss prevention agents at an Albertsons grocery store in Long Beach. They were employees of Tier One Solutions (Tier One), a security company that contracted with Albertsons. Their job was to observe and apprehend shoplifters, and they wore plain clothes to blend in with customers.

On September 30, 2014, Heranic observed appellant in aisle 14, a high-theft aisle. Among other things, aisle 14 contained Tide laundry detergent, one of the most stolen items in the store. Heranic initially estimated he was approximately six feet away from appellant, but then explained he was more like 14 feet away. He had a clear unobstructed view of appellant. He was using mirrors on his cart to observe appellant. Zamora was on the other side of appellant, about the same distance away. Appellant had an empty cart and an empty bag, similar to a "shoe bag" or "soccer bag," in the child portion of the cart. Heranic and Zamora saw appellant select a bag of Tide pods from the shelf and place it in his empty shoe bag. Appellant went to aisle 16 and left the cart and bag, went back to aisle 14 and grabbed three more bags of Tide pods, returned to aisle 16, and put the three bags of pods into his shoe bag also. He pulled the drawstring on the shoe bag to close it.

After observing this, Heranic went outside the store but kept in constant communication with Zamora on his cellular phone. Zamora followed appellant as he approached another aisle, placed the shoe bag on his back like a backpack, and exited the store. Appellant did not attempt to pay for the Tide pods or stop at the registers.

---

[1] Further undesignated statutory references are to the Penal Code.

2

Heranic approached appellant at the exit and identified himself as a loss prevention agent. Zamora also identified himself as such. Heranic asked if he could talk to appellant about what was in his bag. Appellant immediately moved toward the parking lot and raised his elbows to approximately shoulder height, moving them back and forth in a rapid motion. Heranic repeatedly said, "Listen to me," in an effort to get appellant back inside the store. Appellant dropped his arms and Heranic grabbed his right arm. Zamora grabbed appellant's left arm. Appellant struggled against them and tried to get away. He was moving around and pulled both Zamora and Heranic approximately five to 10 feet further from the store exit. Heranic got behind appellant to try to handcuff him, and appellant elbowed him in the face. Zamora got a more secure hold on appellant's arms, and Heranic handcuffed him.

Appellant stopped resisting then, and they took him to an upstairs room in the store. Heranic looked inside the shoe bag and found only the four bags of Tide pods. It did not contain any purchase receipts, cash, or any other method of payment. Heranic took the Tide pods downstairs to get a "training receipt" for them so that he could have a record of their value. The receipt he obtained stated, "Void in training mode."

Heranic assumed Albertsons had surveillance cameras over the entire store, including monitoring aisle 14, but he did not know for certain, and he did not have control over the surveillance footage. Heranic and Zamora recalled seeing surveillance footage of the incident, but only of appellant walking back into the store after they had detained appellant. Heranic believed he had followed Tier One's policies regarding the apprehension of suspects.

Officer Ignicio Zavala of the Long Beach Police Department responded to the Albertsons. He searched appellant before placing him in custody and found 15 cents on appellant's person but no other forms of payment or receipts.

Appellant had a prior conviction for assault with intent to commit rape (§ 220), five prior convictions for burglary (§ 459), and a prior conviction for possession of cocaine base for sale (Health & Saf. Code, § 11351.5).

3

*2. Defense Evidence*

Appellant testified in his own defense.  He went to Albertsons on September 30, 2014, to purchase detergent for his roommate.  He also picked up cupcakes.  He put both the detergent and cupcakes in the cart but not inside his bag.  He paid for the detergent and cupcakes at the cash register and had a receipt.  He then put everything in his bag and exited.  When appellant exited the store, Heranic stopped him; he asked if he could speak to appellant and asked what he had in the bag.  Appellant had the receipt for the detergent and cupcakes in his pocket.  He did not reply to Heranic and turned to walk away, then felt a tug on his bag.  He told Heranic he had paid for the items, but he and Zamora both grabbed appellant.  Heranic took appellant's bag off his back and opened it.  They handcuffed him and walked him inside the store.  Appellant denied hitting Heranic or making contact with him at all.

Heranic and Zamora took appellant upstairs where he gave a written statement saying he had a receipt for the items.  He had his receipt there as well.  Long Beach police officers transported him to the police station.  Appellant believed the police booked into evidence his receipt and the Albertsons incident report containing his statement.

Officer Luis Ramirez of the Long Beach Police Department responded to Albertsons and was provided with evidence, namely the Tier One incident report, the training receipt, appellant's bag, and the four bags of Tide pods.  He was not provided with any cupcakes.

Detective Mark Steenhausen of the Long Beach Police Department contacted Donna Jones on October 1, 2014, another loss prevention agent employed by Albertsons (not a Tier One employee).  At the store, she showed the detective surveillance footage of appellant pushing a shopping cart in the store and of appellant exiting the store.  She copied footage to a flash drive and gave it to another officer working with the detective, who booked it into evidence on October 1, 2014.

The detective tried to view the video on the flash drive on January 15, 2015, and make copies for the prosecution and defense, but he could not open it.  He sent it to the

4

computer crimes unit, which put the video on CD's for the detective, the prosecution, and the defense. The detective then reviewed the video on the CD, and it did not contain the footage of appellant pushing the cart in the store, only footage of him entering and exiting the store. He had asked Jones to copy the footage of appellant in the store in addition to what was on the CD. He did not know what happened to that footage. He did not edit or delete any of the footage Jones gave him.

Jones had no independent recollection of what transpired in the video she showed the detective at the store. It was her practice to provide officers with whatever footage they requested and do her best to provide the most complete coverage of the incident that existed. She did not edit the footage provided to law enforcement. But she had no specific recollection of what she copied on this occasion.

Jones worked at Albertsons from April 2014 to April 2015. For roughly the first half of her employment there, surveillance cameras did not record aisle 14. Jones could not recall whether there were cameras on aisle 14 on the date in question. She no longer worked for Albertsons, but she thought the store should still have the surveillance footage from the date in question.

## PROCEDURE

The second amended information charged appellant with second degree robbery (§ 211) and petty theft after a specified prior conviction (§ 490.2). The information also alleged appellant had served seven prior prison terms (§ 667.5), had one prior strike (§§ 667, subds. (b)-(j), 1170.12, subd. (b)), and had one prior serious felony conviction (§ 667, subd. (a)(1)).

The jury found appellant guilty of petty theft after a specified prior conviction (assault with intent to commit rape), but acquitted him of second degree robbery. It found the seven prior prison term and the prior strike allegations to be true. The court sentenced appellant to a state prison term of eight years, consisting of the midterm of two

5

years, doubled pursuant to the "Three Strikes" law, plus one year each for four prior prison term enhancements.[2]  Appellant filed a timely notice of appeal.

**DISCUSSION**

Appellant contends the court should have granted a mistrial because the prosecution violated *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) by failing to produce certain surveillance video evidence.  Alternatively, he contends his counsel was ineffective for failing to follow up on the video evidence.  He also asserts the court erred in excluding certain evidence of Albertsons' shoplifting policies.  We reject these arguments.

*1.  The Court Did Not Err in Denying Appellant's Mistrial Motion Based on Purported* **Brady** *Error*

Appellant moved for a mistrial on the ground that there was evidence of exculpatory video footage, which the prosecution never produced.  He contended the missing video would show him pushing his shopping cart in the direction of the cash registers and that he did not conceal the detergent and cupcakes inside his bag.  The court denied the motion.  On appeal, he reiterates this claim and argues the court should have granted the mistrial motion (or ordered the prosecution to turn over the video footage).  He asserts the court's failure to do either violated his due process rights under the Fourteenth Amendment to the United States Constitution and *Brady*.  We disagree and hold appellant has failed to establish *Brady* error.

Pursuant to *Brady*, the prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence that is favorable to the defendant and material on either guilt or punishment.  (*Brady, supra*, 373 U.S. at p. 87.)  "There are three

---

[2]    The abstract of judgment indicates appellant was convicted by plea of violating section 490.2 (petty theft after a specified prior conviction).  The abstract should be corrected to show the jury convicted him.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 187 [Court of Appeal may correct clerical errors in the abstract of judgment on its own motion].)  We will so direct in the disposition.

components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  (*Strickler v. Greene* (1999) 527 U.S. 263, 281-282.)  "Prejudice, in this context, focuses on 'the materiality of the evidence to the issue of guilt and innocence.' [Citations.]  Materiality, in turn, requires more than a showing that the suppressed evidence would have been admissible [citation], that the absence of the suppressed evidence made conviction 'more likely' [citation], or that using the suppressed evidence to discredit a witness's testimony 'might have changed the outcome of the trial' [citation].  A defendant instead 'must show a "reasonable probability of a different result."'"  (*People v. Salazar* (2005) 35 Cal.4th 1031, 1043 (*Salazar*).)

The prosecution's duty to disclose "extends even to evidence known only to police investigators and not to the prosecutor," and the prosecutor therefore has a duty to learn of favorable evidence known to the police.  (*Salazar, supra*, 35 Cal.4th at p. 1042.)  At the same time, the prosecution does not have a constitutional "duty to conduct the defendant's investigation for him" or her.  (*Id.* at p. 1049.)  Thus, "[i]f the material evidence is in a defendant's possession or is available to a defendant through the exercise of due diligence, then, at least as far as evidence is concerned, the defendant has all that is necessary to ensure a fair trial, even if the prosecution is not the source of the evidence." (*Ibid.*)

"Conclusions of law or of mixed questions of law and fact, such as the elements of a *Brady* claim [citation], are subject to independent review."  (*Salazar, supra*, 35 Cal.4th at p. 1042.)  The court should grant a mistrial if it "'is apprised of prejudice that it judges incurable by admonition or instruction.'"  (*People v. Jenkins* (2000) 22 Cal.4th 900, 985-986.)  We review the trial court's denial of a mistrial motion for abuse of discretion. (*People v. Cunningham* (2001) 25 Cal.4th 926, 984.)

In the present case, no *Brady* error occurred because there was no showing the prosecution actually suppressed evidence.  (See, e.g., *Salazar, supra*, 35 Cal.4th at p. 1048 ["the evidence must have been 'suppressed' by the government"].)  The evidence

7

that there was surveillance video of appellant pushing a cart through the store came from Detective Steenhausen. His police report stated that Jones showed him footage of appellant pushing a cart, and he testified to this at trial, but Jones had no independent recollection of what the video showed. Detective Steenhausen requested the footage. When he eventually received the CD with the files from Jones, that particular footage of appellant pushing a cart was not among the files. Appellant acknowledges "[t]he record is clear that Detective Steenhausen, assigned to investigate the alleged robbery/theft with which appellant was charged inn [*sic*] this case, did not receive the video surveillance coverage of appellant pushing a cart through the store that he was first shown by loss prevention agent Donna Jones." Although Jones generally did her best to give officers complete video files for an incident, she could not recall specifically what she copied in this case. The detective testified he did not edit or delete any footage. Thus, the notion that the police or the prosecution actually had the pertinent video file and suppressed it is not supported.

Appellant charges that "[n]o effort was made on the part of the prosecution to obtain the video footage that had not been presented to the defense." This is untrue inasmuch as Detective Steenhausen did request the footage from Jones the day after the incident. It was not until January 2015, when he was trying to copy the footage for the parties, that the detective discovered he did not have footage of appellant pushing a cart in the store. In January 2015, appellant had already served a subpoena on Albertsons for surveillance video, and Albertsons responded that it did not have anything to produce because its software only retained video for up to 60 days (contradicting Jones's belief at trial that Albertsons might still have the video). Accordingly, even if the prosecution had re-requested the video at that point, or the court had ordered the prosecution to obtain the video upon appellant's mistrial motion, Albertsons could not have produced it.

Moreover, *Brady* error did not occur here because the showing that the missing video was both favorable and material is lacking. Detective Steenhausen saw appellant pushing a cart through the store. There is no evidence at all that the detective or anyone else saw video showing what appellant asserts it must show—that appellant went toward

the cash registers and that he had items in the cart, as opposed to concealed in his bag. In fact, during a hearing outside the presence of the jury (see Evid. Code, § 402, subd. (b)), the detective testified he did not see any footage of appellant paying or attempting to pay for merchandise, and he did not recall any footage of appellant going anywhere near the cash registers. He further testified that Jones told him there were no surveillance cameras covering aisle 14, so there should not have been video showing what appellant did with the Tide pods immediately after he grabbed them from the shelf. In short, the only evidence about the missing video was that it showed appellant pushing a cart through the store. This was not particularly favorable (or unfavorable) to appellant, and we see no reasonable probability of a different result, had such video been found.

## 2. *Appellant's Ineffective Assistance of Counsel Claim Fails*

In the alternative, appellant argues his trial counsel was ineffective for failing to (1) try to obtain the missing surveillance footage "from Jones," and (2) question Jones at trial about Albertsons' response to appellant's subpoena, which contradicted Jones's statements that the video should still be available. We also reject this argument.

Both the federal and state Constitutions entitle criminal defendants to effective assistance of counsel. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) The defendant has the burden of demonstrating ineffective assistance. (*Ibid.*) The defendant does this by showing "counsel's representation fell below an objective standard of reasonableness" as defined by "prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (*People v. Lucas*, *supra*, at pp. 436-437.) On direct appeal, we will reverse for ineffective assistance only when the record "affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.)

The defendant must also demonstrate prejudice. "Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*People v. Wharton* (1991) 53 Cal.3d 522, 575.)

First, counsel's performance was not deficient for failing to try to obtain the missing footage from Jones. Appellant represented himself until four days before trial, when the court appointed standby counsel. Appellant subpoenaed the video from Albertsons when he was representing himself. At the time of trial, Jones no longer worked for Albertsons, and there is no reason to believe she would have access to Albertsons' surveillance video. Any attempt by counsel to try to obtain it from her would have proven futile. Moreover, there is no reason to believe counsel would have obtained a different response from Albertsons had he tried to subpoena the video yet again at the time of trial.

Second, even assuming counsel should have questioned Jones about Albertsons' response to the subpoena, it is not reasonably probable the result of the trial would have been different. Albertsons' response, consisting of a sworn declaration from a custodian of records, was not in evidence before the jury, nor was the information that Albertsons deleted its surveillance video after 60 days. On this point, the jury had only Jones's testimony that the video should still be available. According to appellant, this "cast the burden of production on appellant of any video showing that appellant did not, for example, place the Tide pods in his soccer bag."

In closing argument, defense counsel argued there was missing video that was important because "that video may show, may answer the question as to whether or not he did pay for these items or not." In rebuttal, the prosecutor argued appellant had the subpoena power and could have obtained the video if he believed it was exculpatory, because according to Jones, the video still existed. Thus, had defense counsel used Albertsons' subpoena response to question Jones, he could have refuted the argument that the video was available and countered the implication that the video was not exculpatory.

Still, this would not have led to a more favorable outcome, in light of the strong evidence against appellant. Both loss prevention agents observed him hide the Tide pods

10

in his bag.  Zamora observed him leave the store without paying for them.  Appellant immediately resisted the loss prevention agents when Heranic asked to talk about the items in his bag.  Although he said he had a receipt on his person, no one found a receipt on him or in his bag, and the only receipt in evidence was the training receipt Heranic generated.  Appellant claimed to have also picked up and purchased cupcakes, but no other witnesses mentioned cupcakes, and they were not in his bag with the Tide pods. Without a showing of prejudice, we may not find ineffective assistance of counsel.

## 3.  *The Trial Court Did Not Err in Excluding Evidence of Shoplifting Policies*

Appellant lastly contends the court should have permitted him to question Heranic and Zamora about Albertsons' shoplifting policies.  He asserts he could have impeached Heranic in particular, who said he had followed Tier One's policies in apprehending appellant.  We disagree the court erred.

Appellant refers us to a document he identified as "Albertsons' Shoplifting Statement," which appears in the record as an exhibit to his petition for writ of mandate. The exhibit consists of one page of what appears to be a multipage document.  At the top of the page, items 4 through 6 of a numbered list appear.  Item 5 states:  "**Approached** the suspect only **after** the last point of purchase but **before** he or she exits the store." Elsewhere on the page, it states:  "If the suspect refuses to cooperate voluntarily or becomes verbally or physically abusive, let the suspect leave, and call the police. **Do not use** physical force of any kind."

At trial, Heranic testified that he followed Tier One's policies in apprehending appellant.  After the court permitted Heranic to answer questions on those policies over the prosecution's objections, it heard argument on the prosecutor's renewed motion in limine to exclude evidence of Tier One's policies and Albertsons' policies on shoplifting. The prosecution argued the policies were irrelevant to whether a robbery or theft occurred.  And at an earlier hearing on the motion in limine, the prosecution pointed out that the Albertsons' policies appellant obtained through discovery applied to Albertsons' associates, but it was unclear whether they applied to Tier One employees such as Heranic and Zamora.  Appellant argued that, had Heranic followed the policy not to use

11

physical force with suspects, appellant would not have elbowed Heranic, which was the force on which the prosecution was relying to show robbery. Thus, he asserted Heranic's failure to follow policy was somehow a defense to robbery. The court granted the motion in limine and excluded further evidence of policies.

We review the court's evidentiary ruling for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The court has discretion to exclude even relevant evidence when "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) In particular, "the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296, superseded on other grounds by Evid. Code, § 452.5.) "[C]ourts may and should consider with particular care whether the admission of such [impeachment] evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Id.* at pp. 296-297.)

The court did not abuse its discretion here. Appellant no longer argues the Albertsons' shoplifting policies were relevant to a robbery defense because the jury acquitted appellant of robbery. Instead, he wanted to use the Albertsons' policies as impeachment evidence, but he has not shown their relevance. Heranic testified he followed *Tier One's* policies, not Albertsons. Tier One was a separate security company that contracted with Albertsons. Appellant fails to demonstrate that Tier One's policies were other than as Heranic represented them, and consequently, that there was anything on which he could have impeached Heranic.

12

Even assuming there was evidence that Heranic violated Tier One's policies (or that he was subject to Albertsons' policies and violated them), this would represent impeachment on a tangential issue. Heranic's confronting appellant outside the store and handcuffing him had nothing to do with appellant's conduct inside the store, which formed the basis for appellant's petty theft conviction. Substantial evidence showed appellant took the Tide pods without paying for them, irrespective of how Heranic apprehended appellant. Accordingly, even if appellant could have impeached Heranic, policy evidence would have consumed time on a clearly tangential issue. The court was well within its discretion to exclude it as either irrelevant or as involving undue consumption of time.

## DISPOSITION

The trial court shall correct the abstract of judgment to reflect that appellant was convicted by jury trial, not by plea (*ante*, fn. 2), and shall forward the corrected abstract of judgment to the Department of Corrections and Rehabilitation. So modified, the judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.

13